JOSEPHINE FINUCANE, Appellant, *v.* STANDARD ACCIDENT INSURANCE COMPANY, Respondent.

Fourth Department, July 2, 1918.

**Insurance — accident policy construed — provision limiting recovery to ten per cent of face of policy — accident followed by blood poisoning — when beneficiary entitled to recover full amount of policy — construction of contracts.**

Where a policy of accident insurance provided for the payment of $5,000 if death were caused by accidental bodily injuries, but limited the payment to only ten per cent of said sum in case " the injury causing the loss or the loss itself results from or is contributed to by any poison, disease, infection," etc., the beneficiary is entitled to recover the principal sum named in the policy where the insured, in the course of her employment, struck her leg causing an abrasion of the skin which became infected and developed into acute blood poisoning from which she died.

Under said policy the provision limiting the recovery to ten per cent applies only to a poison, disease or infection from which the insured was suffering prior to and at the time of the accident.

Where an accident insurance policy contains limitations to the previously expressed liability of the insured and these clauses are ambiguous and uncertain in meaning, that construction will be adopted which is most favorable to the insured.

The meaning of words in such policy may be ascertained by reference to the meaning of words associated with them.

APPEAL by the plaintiff, Josephine Finucane, from a judgment of the Supreme Court in her favor, entered in the office of the clerk of the county of Erie on the 30th day of July, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*James O. Moore* [*Norton, Penney, Spring & Moore,* attorneys], for the appellant.

*Lyman M. Bass* [*Kenefick, Cooke, Mitchell & Bass,* attorneys], for the respondent.

FOOTE, J.:

Plaintiff is the beneficiary under an accident insurance policy issued by defendant to her sister, Julia Finucane, who died on April 28, 1915, of blood poisoning resulting from an accident which she met with eight days before. By the terms of the policy Julia was insured " against disability or death resulting directly, exclusively and independently of all other causes from accidental bodily injuries " in the principal sum of $5,000. In case of death, this sum was payable to plaintiff.

The accident occurred by the deceased striking her leg against a truck in the department store where she worked, causing an abrasion of the skin, which became infected by the germ called staphyloccus from which developed acute general septicaemia or blood poisoning which was the cause of her death.

The policy contained provisions limiting the amount payable in case of death to ten per cent of the principal sum in certain contingencies, and the learned trial judge ruled as matter of law that by reason of these provisions plaintiff could recover only ten per cent of the principal sum of $5,000, although she sued for and claimed the right to recover the full amount, and this ruling presents the principal question upon this appeal.

The provisions limiting the liability to ten per cent are

contained in six separately numbered subdivisions of article 11. The subdivision which has been held effective to reduce the recovery to ten per cent is numbered 3, and is as follows:

" 3. Where either the injury causing the loss or the loss itself results from or is contributed to by any poison, disease, infection, asphyxiation or gas, or from hernia, or from fits, vertigo, somnambulism or intoxication,  * * *   then and in all cases referred to in this paragraph, the amount payable shall be one-tenth of the amount which otherwise would be payable under this policy, anything in this policy to the contrary notwithstanding."

The learned trial judge has construed this limitation to apply to and cover an infection received with or in consequence of the injury and as a part thereof.

I think it should not be so construed and that the limitation applies only to a poison, disease or infection from which the deceased was suffering prior to and at the time of the accident.

Where an accident insurance policy contains exceptions and limitations to the previously expressed liability of the company and these clauses are ambiguous and uncertain in their meaning and capable of more than one construction, the rule is well settled that that construction should be adopted which is most favorable to the insured, and they should be held to have the meaning which the insured might reasonably have understood them to have. A very common effect of a wound or injury breaking the skin is a germ infection, and in most cases this is the most serious consequence to be apprehended. If it was not the intention to insure against such consequences, it certainly would not be difficult to say so in plain terms which could have no other meaning and as to which the insured could not be misled. As has been well said, they should not be terms which mean one thing in the hands of the solicitor and another in the hands of an adjuster. I think the insured had the right to interpret these limitations as referring to conditions existing prior to the accident or which had something to do with causing the accident, and that that is a permissible and natural and probable interpretation for an insured to make, reading the limitations as contained in article 11 together.

The clause of this article numbered 1 relates to injuries

" from voluntary exposure to unnecessary danger or to obvious risk or injury, or from the intentional act of any other person (assaults committed upon the insured for the sole purpose of burglary or robbery excepted); or from voluntary over-exertion on the part of the insured."

Clause 2 relates to injury " from or * * * received while quarreling, fighting or violating the law."

Clause 3 is the one which we are called upon to construe and has already been quoted above.

Clause 4 relates to injury sustained " while the insured is insane, delirious, or under the influence of any intoxicant or narcotic, or while the insured is undergoing any surgical operation or treatment (except such as is made necessary solely by injury covered by this policy and performed within ninety days thereof)."

Clause 5 is where the injury " results in insanity, hernia or orchitis."

Clause 6 is " where the injury causing the loss makes no visible contusion or wound on the exterior of the body of the insured (except in case of drowning)."

In all these cases the amount payable is to be only ten per cent of the amount insured by previous provisions of the policy.

It will be seen that clause 5 is the only clause which expressly refers to results caused by the injury itself, namely, insanity, hernia or orchitis. Every condition of the article which precedes clause 3 is a condition existing before the injury, and so it is with the condition in the clause next following.

By the well-known maxim *noscitur a sociis* the meaning of the words in clause 3 may be ascertained by reference to the meaning of the words associated with them as *ejusdem generis* to those words. (*Matter of Hermance,* 71 N. Y. 481.)

It is clear that the words of clause 3, " fits, vertigo, somnambulism or intoxication," refer to conditions existing before the injury and which might well predispose the insured to accidents. The same is true of asphyxiation or gas. I think we should read the words " poison, disease, infection " as used in the same sense and not as referring to conditions produced by the injury and which but for the injury would not have existed at all. I think this court is committed to such a construction by its decision in *Garvey* v. *Phœnix*

*Preferred Accident Ins. Co.* (123 App. Div. 106) and that it is supported by the great weight of authority in England and in this country.   (See *Mardorf* v. *Accident Ins. Co.*, L. R. [1903] 1 K. B. Div. 584.)

In that case the policy was subject to a condition that it should not apply to " death caused by or arising wholly or in part from disease or other intervening cause." The assured accidentally inflicted a wound on his leg with his thumb nail. In a few days erysipelas set in, followed by septicaemia and septic pneumonia from which he died. It was held that the erysipelas, septicaemia and septic pneumonia were not " intervening causes " within the meaning of the policy, but merely different stages in the development of the septic condition which was immediately brought about by the introduction of the poison, and that the man's death was directly and solely caused by the accidental injury to his leg. (See, also, *Martin* v. *Manufacturers' Accident Indemnity Co.*, 151 N. Y. 94; *Cary* v. *Preferred Accident Ins. Co.*, 127 Wis. 67; also reported 5 L. R. A. [N. S.] 926, where many of the cases are collected and reviewed in an editor's note; *Central Accident Ins. Co.* v. *Rembe*, 220 Ill. 151; *Bailey* v. *Interstate Casualty Co.*, 8 App. Div. 127; *Rheinheimer* v. *Ætna Life Ins. Co.*, 77 Ohio St. 360; *Ballagh* v. *Interstate Business Men's Accident Assn.*, 176 Iowa, 110; *Western Commercial Travelers' Assn.* v. *Smith*, 85 Fed. Rep. 401.) There are numerous other cases to the same effect which it is unnecessary to cite. None of the cases cited contains precisely the same phraseology in the clause limiting the company's liability, but in all of them the clauses were more or less ambiguous and were capable of the construction contended for by the defendant here. But the ambiguities in the clauses in each case were resolved against the companies which had prepared and issued the policies.

It follows that the trial court erred in giving construction to the policy in suit, and that the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concurred.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.